UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
BEN-ZION ALCALAY and
18BLACKBEARS, LLC,

                      Plaintiffs,                     **MEMORANDUM & ORDER**
                                                          23-CV-7919 (PKC) (SIL)

          - against -

GARY FISCHOFF and BERGER, FISCHOFF,
SHUMER, WEXLER & GOODMAN, LLP,

                      Defendants.
-------------------------------------------------------

PAMELA K. CHEN, United States District Judge:

This action involves legal malpractice allegations brought by Ben-Zion Alcalay ("Ben-Zion") and 18Blackbears, LLC ("18BBs") (collectively, "Plaintiffs") against Defendants Gary Fischoff ("Fischoff") and his law firm Berger, Fischoff, Shumer, Wexler & Goodman, LLP (collectively, "Defendants"). Defendants have moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). In the alternative, Defendants seek a stay of this case pending the completion of a parallel bankruptcy proceeding. For the reasons stated below, Defendants' motion to dismiss this action is denied and their request to stay is denied as moot.

## BACKGROUND

This case arises from a years-long business dispute between Plaintiffs and non-parties that culminated in a Chapter 7 bankruptcy action and subsequent appeal (together, the "Bankruptcy Action"). Specifically, Plaintiffs allege that Defendants committed legal malpractice in their representation of Plaintiffs in the Bankruptcy Action. (Am. Compl., Dkt. 22 ("Am. Compl."), ¶¶ 152–208.)

I.      **Factual Background**[1]

   A.      **Prior to the Bankruptcy Action**

In 2017, non-parties Benjamin Dynkin ("Dynkin") and Barry Dynkin (together, "the Dynkin Brothers") formed a company called Atlas Cybersecurity, LLC ("Atlas"), which provides cybersecurity monitoring and management services to small and medium-sized enterprises with information technology systems. (N.Y. State Ct. Compl., Dkt. 22-3, ¶¶ 18–20.)[2] The Dynkin Brothers turned to Ben-Zion's two sons (the "Alcalay Brothers")[3] to invest in Atlas. (*Id.* ¶¶ 16, 23; *see also id.* ¶ 98 (identifying Ben-Zion as the Alcalay Brothers' father).) To convince the Alcalay Brothers to invest, the Dynkin Brothers made various representations about Atlas, including that Atlas had generated significant sales, had at least 40 guaranteed clients ready to proceed with contracts that would generate about $50,000 in monthly revenue, would be profitable with annual revenues between $250,000 and $300,000, and that Atlas had received a $50,000 loan to serve as a "safety net" for Atlas. (Am. Compl. ¶ 132.)

Relying on these statements, the Alcalay Brothers invested $500,000 in Atlas for a 50% ownership stake. (*Id.* ¶ 131.) To facilitate ownership, the Alcalay Brothers created their own limited liability company, 18BBs, and the Dynkin Brothers formed BenBar, LLC ("BenBar"). (N.Y. State Ct. Compl., Dkt. 22-3, ¶ 35). 18BBs and BenBar together formed and equally owned

---

[1] For purposes of this Memorandum & Order, the Court assumes the truth of Plaintiffs' non-conclusory, factual allegations in the Amended Complaint. *Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[2] In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Because Plaintiffs' complaint in New York state court is attached to the Amended Complaint in this action, the Court deems it incorporated by reference.

[3] The Dynkin and Alcalay Brothers are cousins. (N.Y. State Ct. Compl., Dkt. 22-3, ¶ 16.)

DACS Cybersecurity Holdings, LLC ("DACS"), a holding company with 100% ownership of Atlas. (*Id.* ¶¶ 35, 39.)

In late 2019, the Dynkin Brothers needed additional investment in Atlas. (Adversary Compl., Dkt. 22-7, ¶ 33.)[4] Though the Alcalay Brothers refused to further invest, their father Ben-Zion met with the Dynkin Brothers in 2020 to discuss investing. (*Id.* ¶¶ 34–35.) Ben-Zion ultimately loaned Atlas approximately $170,291.40, allegedly as a result of false representations by Benjamin Dynkin that induced Ben-Zion's investment. (*Id.* ¶¶ 40–41, 51–53.) By the end of 2019, the Dynkin Brothers had allegedly squandered approximately $650,000 in funding that was provided to them by 18BBs and Ben-Zion and they continued to mismanage funds. (*Id.* ¶¶ 94–95, 97–100.) Upon discovering these facts, Ben-Zion filed a state court action in Florida (the "Florida Action") and, in December 2021, he received a default judgment against the Dynkin Brothers and Atlas for $293,291.40. (Am. Compl. ¶ 12.) Additionally, 18BBs filed two actions in New York state court ("New York Actions")—one against Benjamin Dynkin, DACS, and BenBar, seeking "dissolution of DACS, recission of the 18BB[s] Loan [of $500,000], and alleged causes of action for fraud, breach of fiduciary duty and breach of contract against [Benjamin Dynkin]," (*id.* ¶ 16), and the other derivatively on behalf of DACS against Benjamin Dynkin and Atlas, seeking "dissolution of Atlas and alleging causes of action for breach of fiduciary duty and corporate waste against [Benjamin Dynkin]," (*id.* ¶ 17).

### B. Bankruptcy Action and Alleged Malpractice

In February 2022, Benjamin Dynkin initiated the Bankruptcy Action by filing a Chapter 7 Bankruptcy Petition. (Am. Compl. ¶ 10.) Plaintiffs retained Defendants to represent them as

---

[4] The Adversary Complaint filed as part of the Bankruptcy Action is attached as an exhibit and incorporated by reference into the Amended Complaint for reasons stated *supra*.

creditors in this action.  (*Id.* ¶ 20.)  The retainer agreement provided that Defendants were to, *inter alia*, commence an adversary proceeding objecting to the discharge of the debts owed to Plaintiffs.[5] (*Id.* ¶ 22.)   Plaintiffs intended to contest discharge pursuant to 11 U.S.C. § 523(a)(2) ("Section 523(a)(2)") and 11 U.S.C. § 523(a)(4) ("Section 523(a)(4)") (collectively, "Section 523(a)"), for fraudulent inducement in obtaining the loans from 18BBs and Ben-Zion, and 11 U.S.C. § 727(a)(4) ("Section 727(a)(4)") for making false statements under oath throughout the bankruptcy proceedings.  (*Id.* ¶¶ 23, 68.)  Defendant Fischoff served as lead counsel for the duration of the Defendants' representation of Plaintiffs.  (*Id.* ¶ 21.)

The Bankruptcy Court set an initial deadline of May 9, 2022, to file an Adversary Complaint objecting to the discharge of any debts under Sections 523(a) or 727(a)(4).  (*Id.* ¶ 23.) On April 14, Defendants filed their first motion for an extension of time to file the Adversary Complaint, and Dynkin consented to an extension until August 22, 2022.  (*Id.* ¶¶ 36, 39.)  The Bankruptcy Court granted the motion and set a new deadline of August 22, 2022.  (*Id.* ¶ 39).

On August 1, 2022, Plaintiffs' counsel Jonathan Davidoff ("Davidoff")—who represented Plaintiffs in the state court actions but stayed apprised of developments in the Bankruptcy Action, often communicating with Defendant Fischoff on behalf of Plaintiffs—received notice "via ECF"

---

[5] "A bankruptcy discharge releases the debtor from personal liability for certain specified types of debts." *Discharge in Bankruptcy–Bankruptcy Basics*, U.S. Courts, https://www.uscourts.gov/court-programs/bankruptcy/bankruptcy-basics/discharge-bankruptcy-bankruptcy-basics (last visited Mar. 25, 2025).  In Chapter 7 bankruptcy cases, "the court usually grants the discharge promptly on expiration of the time fixed for filing a complaint objecting to discharge[,] . . . [typically] 60 days following the first date set for the 341 meeting," [a mandatory meeting where the "debtor is orally examined by the trustee"].  *Id.*; *see also Section 341 Meeting*, U.S. Bankr. Court, E.D.N.Y., https://www.nyeb.uscourts.gov/section-341-meeting-first-meeting-creditors (last visited Mar. 27, 2025).  "To object to the debtor's discharge, a creditor must file a complaint in the bankruptcy court before the deadline set out in the notice.  Filing a complaint starts a lawsuit referred to in bankruptcy as an 'adversary proceeding.'" *Discharge in Bankruptcy–Bankruptcy Basics*, U.S. Courts.  That complaint is often referred to as an "adversary complaint."

4

(i.e., the court's electronic docketing system) that other creditors had already submitted proofs of claim, prompting Davidoff to ask Defendants whether they had submitted proofs of claim on Plaintiffs' behalf.[6] (*Id.* ¶¶ 18–19, 41.) The same day, Fischoff replied that they had not yet done so. (*Id.* ¶¶ 41–42.) Fischoff also rescheduled Rule 2004 Examinations of relevant witnesses due to his wife having a pre-scheduled medical procedure on the days of the scheduled examinations and a planned international vacation. (*Id.* ¶¶ 47–48, 54.) These exams were conducted on August 12 and 16, 2022. (*Id.* ¶¶ 51, 53.) Realizing that more documents were needed from the witnesses following their examinations and that the deadline was approaching, Defendants filed a second motion to extend the deadline for filing Plaintiffs' Adversary Complaint on August 18, 2022. (*Id.* ¶¶ 55–56.)

While the second extension motion was still pending, the August 22, 2022 deadline for Plaintiffs to submit an Adversary Complaint passed. Defendant Fischoff told Davidoff that it was unnecessary to file the Adversary Complaint because courts "routinely" granted extensions. (*Id.* ¶ 59.) Defendants' invoices show that they did no work to prepare an Adversary Complaint before the August 22 deadline. (*Id.* ¶ 58.) On September 6, 2022, Dynkin filed an opposition to Plaintiffs' second motion to extend the Adversary Complaint deadline. (*Id.* ¶ 61.) Upon receiving notification of this filing, Davidoff expressed to Fischoff that the Adversary Complaint should be filed immediately, and Fischoff replied, "that's the plan." (*Id.*) Fischoff then told Davidoff that

---

[6] In Chapter 7 bankruptcy proceedings, "[a] creditor holding an unsecured claim will get a distribution from the bankruptcy estate only if the case is an asset case and the creditor files a proof of claim with the bankruptcy court." *Process–Bankruptcy Basics*, U.S. Courts, https://www.uscourts.gov/court-programs/bankruptcy/bankruptcy-basics/process-bankruptcy-basics (last visited Mar. 25, 2025). Here, the bankruptcy proceeding "was originally designated as a so-called 'no asset' case but was later re-designated as an asset case on July 18, 2022, after the case Trustee reported the discovery of assets." (Bankr. Ct. Order, Dkt. 22-10, at 2 n.3.) Following this discovery, the Bankruptcy Court set the proofs of claim deadline to October 17, 2022. *In re Dynkin*, No. 8-22-70234 (AST) (Bankr. E.D.N.Y. July 19, 2022), Dkt. 43.

5

there was a "new deadline" of September 13, 2022, for filing the Adversary Complaint. (*Id.* ¶ 62.) In fact, the Bankruptcy Court never authorized a September 13 deadline, and Plaintiffs allege that Fischoff knew this when he falsely told Davidoff that there was a new deadline. (*Id.* ¶ 63.) In any event, Defendants missed the "new deadline," instead filing the Adversary Complaint on September 14, 2022. (*Id.* ¶ 69.) On December 21, 2022, the Bankruptcy Court issued an order declining to grant the extension to file the Adversary Complaint, finding that Plaintiffs had failed to demonstrate good cause for the tardy filing and that the record "strongly demonstrate[d] that Creditors [i.e., Plaintiffs] in fact could have filed their [Adversary Complaint] by August 22, and under applicable law they should have." (*Id.* ¶¶ 90, 97; Bankr. Ct. Order, Dkt. 22-10, at 7–8.) Since Defendants did not submit the Adversary Complaint on time, Dynkin's debts to Plaintiffs were discharged. (Am. Compl. ¶ 98.) Plaintiffs subsequently appealed the Bankruptcy Court's order and on February 6, 2024, the Honorable Nusrat J. Choudhury denied their appeal. *See 18Blackbears, LLC v. Dynkin*, No. 22-CV-7828 (NJC) (E.D.N.Y. Feb. 6, 2024), Dkt. 24.

Since the Bankruptcy Action "was . . . re-designated as an asset case on July 18, 2022," (Bankr. Ct. Order, Dkt. 22-10, at 2 n.3), Plaintiffs could still file proofs of claim to recover available assets from the debtor's estate. Separate from the Adversary Complaint, on November 29, 2022, Defendants, on Plaintiffs' behalf, filed a proof of claim for $600,000 on behalf of 18BBs and one for $293,291.40 plus interest for Ben-Zion. (Am. Compl. ¶¶ 81–84.) The proofs of claim were filed more than a month after the Bankruptcy Court's deadline of October 17, 2022, and only after the bankruptcy "Trustee and/or [Dynkin's counsel] informed Mr. Fischoff [on November 28, 2022] that proof[s] of claim[] had not been filed on behalf of [] Plaintiffs by [] Defendants." (*Id.* ¶¶ 78–79.) "After receiving such notice, Mr. Fischoff, on November 28, 2022, stated that he 'fucked up' and that he would immediately file the proofs of

6

claim[], which he did, and advise his malpractice carrier of such negligence." (*Id.* ¶ 80; *see also id.* ¶¶ 90, 100 (after Bankruptcy Court's December 21, 2022 denial of Plaintiffs' request to extend Adversary Complaint filing deadline, Fischoff stated that the failure to timely file Plaintiffs' proofs of claim "was a 'major fuck up' on his part").)[7] In their Amended Complaint in this action, Plaintiffs forecast that, because of the untimely filing of the proofs of claim, Plaintiffs would "not [be] permitted to collect any proceeds from [Dynkin's] estate until all other creditors' claims were satisfied[,]" which, in turn, meant that Plaintiffs would not be able to "use [their] leverage as [] creditor[s] to purchase assets from the [Dynkin's] estate to satisfy [18BBs'] claims against [Dynkin.]" (*Id.* ¶¶ 85–88.) Plaintiffs also predicted that "when funds [were] disbursed from [Dynkin's] estate, [Plaintiffs would] be . . . the last two . . . to collect on [their] claims as a result of Defendants' negligence in the untimely filing of [the] proof[s] of claim."[8] (*Id.* ¶ 88; *see also id.* ¶ 85 (making parallel allegations as to Ben-Zion and 18BBs).)

## II. Procedural History

Plaintiffs filed their Complaint in this action on October 24, 2023. (Dkt. 1.) Plaintiffs filed an Amended Complaint on February 15, 2024. (Am. Compl., Dkt. 22.) In their Amended Complaint, Plaintiffs allege four counts of legal malpractice arising from the failure to timely file the Adversary Complaint and proofs of claim in the Bankruptcy Action. (*Id.* ¶¶ 152–208.)

---

[7] Although the Amended Complaint does not identify to whom Fischoff made this statement, the Court infers that Fischoff said it during his November 28, 2022 conversation with the Trustee and Dynkin. (*See* Am. Compl. ¶¶ 79–80.)

[8] As discussed *infra*, since the briefing of Defendants' motion, the Bankruptcy Action has concluded, *In re Dynkin*, No. 8-22-70234 (AST) (Bankr. E.D.N.Y. Nov. 8, 2024), Dkt. 131, and according to the Chapter 7 Trustee's Final Account and Distribution Report, Plaintiffs received a total of $15,721.75 from Dynkin's assets. *Id.*, Dkt. 130, at ECF 5 (citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination). The report, in fact, bears out Plaintiffs' prediction that they would be the last creditors to collect. *Id.* (showing Plaintiffs' unsecured claims as the last two paid).

Defendants' motion to dismiss the Amended Complaint was fully briefed on June 26, 2024. (Dkts. 29–30.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In addressing the sufficiency of a complaint, a court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester County*, 3 F.4th 86, 90–91 (2d Cir. 2021) (citation omitted).

## DISCUSSION

"To state a claim for legal malpractice under New York law, [Plaintiffs] must demonstrate (1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (emphasis in original). As discussed below, Plaintiffs have sufficiently alleged all three elements to state their claim.

8

I.  **Attorney Negligence**

To show an attorney acted negligently, a plaintiff must plausibly allege that the "attorney's conduct 'fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession.'" *Achtman*, 464 F.3d at 337 (quoting *Grago v. Robertson*, 370 N.Y.S.2d 255, 258 (N.Y. App. Div. 1975)). "Generally, an attorney may only be held liable for 'ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action.'" *Id.* (quoting *Bernstein v. Oppenheim & Co.*, 554 N.Y.S.2d 487, 489–90 (N.Y. App. Div. 1990)).

Here, Plaintiffs have sufficiently alleged that Defendants were negligent in their prosecution of Plaintiffs' discharge claims and by filing Plaintiffs' proofs of claim late. Indeed, Defendants are alleged to have admitted as much by describing their actions as "major" mistakes. (Am. Compl. ¶ 100; *see also id.* ¶ 80 (Plaintiffs alleging that Fischoff "stated that he 'fucked up' and . . . advise[d] his malpractice carrier of such negligence").) Plaintiffs also allege, among other things, that Defendants: (1) were reminded multiple times of the approaching deadlines, yet still missed them; (2) represented to Plaintiffs that a September 13 deadline existed when it did not; (3) failed to timely file Plaintiffs' Adversary Complaint, in part because Defendants operated under the erroneous assumption that the Bankruptcy Court would grant a second extension, despite the well-known "good cause" standard for such extensions; and (4) failed to timely file the required proofs of claim—all to their clients' detriment. (*Id.* ¶¶ 41, 55, 59, 62–63, 78–83.) These allegations, if proven, would demonstrate that Defendants fell far short of "the ordinary and reasonable skill and knowledge commonly possessed by a member of [the] profession." *Grago*, 370 N.Y.S.2d at 258. Thus, the negligence element is satisfied.

9

## II. Causation

With respect to causation, Plaintiffs claim that but for Defendants' negligence, they would have been able to recover the debt that they held—$293,291.40 plus interest for Ben-Zion and $600,000 for 18BBs—because it was non-dischargeable pursuant to Sections 523(a) and 727(a)(4). (Am. Compl. ¶¶ 81, 83, 113, 129–32.) Under Section 523(a), debts "obtained by . . . false pretenses, a false representation, . . . actual fraud," or embezzlement cannot be discharged by debtors in a bankruptcy proceeding. 11 U.S.C. § 523(a)(2)(A), (4).[9] Under Section 727(a)(4), a debtor will not receive a discharge if he "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4). Defendants argue in their motion that these allegations are insufficient because they fail to demonstrate "but for" causation, as required for a legal malpractice claim. (Defs.' Mem. of L. in Supp. of Mot. to Dismiss, Dkt. 29-11 ("Defs.' Br."), at 12–17.)

The Court considers the sufficiency of Plaintiffs' causation allegations below.

### A. Legal Standard

To establish causation in a legal malpractice action, "a plaintiff must plausibly allege that, but for the malpractice, the plaintiff would have received a more advantageous result, would have prevailed in the underlying action, or would not have sustained some actual and ascertainable damage." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 799 (S.D.N.Y. 2018). "[A] plaintiff's burden of proof . . . is a heavy one. The plaintiff must prove first the hypothetical outcome of the underlying litigation and, then, the attorney's liability for malpractice in connection with that litigation." *Lindenman v. Kreitzer*, 775 N.Y.S.2d 4, 8 (N.Y. App. Div. 2004).

---

[9] Section 523(a)(4) also specifically prevents debts for fraud by fiduciaries from being discharged. 11 U.S.C. § 523(a)(4).

"Because a plaintiff must win a 'case within a case' to prevail in a legal malpractice claim under New York law, . . . the federal requirement that a plaintiff state facts that 'plausibly' allege a cause of action necessarily extends to the description of the underlying claim that the plaintiff alleges should have been brought." *Houraney v. Burton & Assocs., P.C.*, No. 08-CV-2688 (CBA) (LB), 2010 WL 3926907, at *9 (E.D.N.Y. Sept. 7, 2010) (quoting *Joyce v. Thompson Wigdor & Gilly LLP*, No. 06-CV-15315 (RLC) (GWG), 2008 WL 2329227, at *4 (S.D.N.Y. June 3, 2008)), *R. & R. adopted*, 2011 WL 710269 (E.D.N.Y. Feb. 22, 2011).

"Allegations of bankruptcy fraud [such as under Sections 523 and 727], like all allegations of fraudulent predicate acts, are subject to the heightened pleading requirements of [Rule] 9(b)." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). To satisfy the pleading requirements of Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Second Circuit has interpreted this to require the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

In sum, to successfully allege the causation prong of their legal malpractice claim, Plaintiffs must both successfully allege that they would have prevailed in the underlying Bankruptcy Action under either Section 523(a) or 727(a)(4), meeting the heightened pleading requirements for stating these fraud claims, and allege a nexus between the unfavorable outcome in the litigation and Defendants' legal malpractice.

11

### B. Application

The Court first considers Plaintiffs' claim in the Bankruptcy Action that, pursuant to Section 727(a)(4), Dynkin's debts to 18BBs and Ben-Zion were obtained through fraud and cannot be discharged. To state a Section 727(a)(4) claim, Plaintiffs must allege five elements: (1) the debtor made statements under oath in connection with his bankruptcy case; (2) the statements were false; (3) the debtor knew the statements were false; (4) the statements were made with fraudulent intent; and (5) the statements materially related to the debtor's bankruptcy case. *In re Venticinque*, 643 B.R. 708, 724 (Bankr. E.D.N.Y. 2022).

#### 1. Stating the Section 727(a)(4) Claim

As a preliminary matter, the Adversary Complaint sufficiently alleges that Debtor Benjamin Dynkin made false statements under oath. Plaintiffs allege—and Defendants do not dispute—that Dynkin made statements on his Schedule J form, which outlines the debtor's expenses, that clearly contradicted his later testimony in his Section 341 creditors meeting. (Adversary Compl., Dkt. 22-7, ¶¶ 10–23.) Both the Schedule J form and Dynkin's testimony constitute statements under "oath" for purposes of Section 727(a)(4). *In re Venticinque*, 643 B.R. at 725. In this case, Dynkin stated on his Schedule J form that he spent $1,000 per month on rent. (Adversary Compl., Dkt. 22-7, ¶ 10.) But he later testified in his Section 341 creditors meeting that he was not currently paying rent, that he lived in his father's house, and that the $1,000 per month was "debt accruing each month to [his] father." (*Id.* ¶ 11.) Later on in the same testimony, he stated that in lieu of paying his father rent, Dynkin "gave [his father] the ownership interest in [a] patent." (*Id.* ¶ 12.) But the transfer of this patent was never disclosed in Dynkin's Statement of Financial Affairs. (*Id.* ¶¶ 19–20.) Lastly, Dynkin claimed on his Schedule J form that he was paying $1,000 per month for health insurance, but later testified that the health insurance payments were actually paid by BenBar, a holding company Dynkin created, from money provided by his

12

father. (*Id.* ¶¶ 13–14.) Plaintiffs have thus adequately pled the first and second elements of the Section 727(a)(4) claim, showing that Dynkin made false statements under oath either in his Schedule J form or Section 341 creditors meeting testimony.

Defendants argue that Plaintiffs have failed to sufficiently plead the third, fourth, and fifth elements of their Section 727(a)(4) claim—namely, knowledge of falsity, fraudulent intent, and materiality. (Defs.' Br. at 15–17.) The Court disagrees.

To sufficiently allege the third element of a Section 727(a)(4) claim, "[t]he statutory requirement of 'knowingly' mandates only that the [debtor's] act be voluntary and intentional—it does not require that a [debtor] know that the conduct violates the law." *In re Casado*, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995). There is no dispute that Dynkin made the statements on the Schedule J and at the Section 341 creditors meeting voluntarily and intentionally. For example, when Dynkin represented that he "paid" $1,000 per month for his health insurance, there is no doubt that he made those statements voluntarily and that he knew the health insurance payments were actually being made by a holding company that Dynkin had himself created, with money provided by his father and not his own money.

The fourth element of "[f]raudulent intent, for purposes of Section 727(a)(4)[], can be established by a showing of, [*inter alia*] the debtor's reckless disregard for the truth of his statements." *In re Gordon*, 535 B.R. 531, 537 (S.D.N.Y. 2015) (quoting *In re Antoniou*, 515 B.R. 9, 24 (Bankr. E.D.N.Y. 2014)). "Reckless disregard for the truth is analyzed by considering the following factors: '(a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies.'"

13

*In re Antoniou*, 515 B.R. at 24 (quoting *In re Adler*, 494 B.R. 43, 77 (Bankr. E.D.N.Y. 2013)) (cleaned up).

Here, Plaintiffs have sufficiently alleged fraudulent intent. The Second Circuit has recognized that "statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business." *Diorio v. Kreisler-Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969) (per curiam). Dynkin is an educated individual with a law degree who is gainfully employed as a vice president at a large bank and is therefore presumed to be financially sophisticated. (Am. Compl. ¶ 142.) Notably, further questioning as to the $1,000 monthly "rental expenses" did not resolve the inconsistencies in Dynkin's testimony. Dynkin both testified that the rental expense listed on his Schedule J was actually "debt accruing each month to [his] father," (Adversary Compl., Dkt. 22-7, ¶¶ 10–11), and also testified that, in lieu of paying rent, Dynkin "gave [his father] the ownership interest in [a] patent," (*id.* ¶ 12). When Dynkin's father, Semyon Dynkin, was asked if he received anything from Dynkin in lieu of rent, he said he did not. (*Id.* ¶ 18.) Indeed, as the Adversary Complaint alleges, "[o]nly one version is truthful," but the testimony and examination of witnesses did not clarify which one. (*Id.* ¶ 23.)

Lastly, the false statements made here—regarding monthly rental payments, transfer of ownership of a patent, and monthly health insurance payments—are material because they all relate to Dynkin's financial condition and the extent of his property. *See In re Gordon*, 535 B.R. at 538 (explaining that a false statement or omission is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property" (quoting *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam)).

14

The only response Defendants offer with respect to Dynkin's knowledge is that, while "untrue or erroneous," the statements do not rise to the level of showing knowledge of falsity and intent "to defraud the Creditors." (Defs.' Br. at 17.) But a showing of fraudulent intent "to defraud creditors" is not a necessary requirement of the Section 727(a)(4) claim. *See In re Gordon*, No. 09-16230 (REG), 2015 WL 269800, at *18 (Bankr. S.D.N.Y. Jan. 13, 2015), *aff'd*, 535 B.R. 531 (S.D.N.Y. 2015) ("Importantly, and in contrast to section 727(a)(2), the debtor's intent to defraud under 727(a)(4)(A) does not need to be directed at creditors or a trustee."). All that is required is that the debtor knew that his statements were false; here, it is reasonable to infer from Plaintiffs' allegations that Dykin did.

Construing the facts in the light most favorable to Plaintiffs, as the Court must at this stage, Plaintiffs have sufficiently pled a claim, pursuant to Section 727(a)(4), that Dynkin's debts in the Bankruptcy Action were obtained through fraud and could not be discharged.[10] The Court therefore need not analyze whether Plaintiffs could have sufficiently pled a claim under

---

[10] Plaintiffs seek to further amend their Amended Complaint by including new information about Dynkin's fraudulent action in their opposition brief: "Debtor listed his father . . . as a creditor for . . . $250,000 and [the father] then file[d] a proof of claim in the amount of $196,700 with no supporting documents. . . . The court in the Bankruptcy Action agreed with [Plaintiffs'] assertions [that the proof of claim was fraudulent] and disallowed and struck it from the registry." (Pls.' Mem. of L. Opp'n Mot. to Dismiss, Dkt. 30 ("Pls.' Br."), at 15.) While the Court finds the pre-existing allegations in the Amended Complaint sufficient to survive a motion to dismiss, the Court cannot consider a plaintiff's allegations made only in their opposition papers and not in the operative complaint. "It is well-settled that a plaintiff 'cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'" *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (alteration in original) (quoting *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)). If Plaintiffs seek to amend their pleadings further, they may do so within 30 days of this Order, provided that they comply with all of the requirements of Rule 15. *See* Fed. R. Civ. P. 15(a)(2); *see Keles v. Davalos*, 642 F. Supp. 3d 339, 379 (E.D.N.Y. 2022) ("Generally speaking, plaintiffs are granted leave to amend following a motion to dismiss.").

15

Sections 523(a)(2) and (a)(4). This is because Section 727(a)(4), which bars discharge of all debts held by a debtor, is an alternative argument to Section 523, which bars discharge of debts owed to particular creditors. *In re Chadha*, 598 B.R. 710, 717 (Bankr. E.D.N.Y. 2019) ("Objections pursuant to [Sections] 523(a) and . . . 727(a) are forms of alternative relief that exist independent of one another, and thus should be analyzed separately.").

2. <u>Collectibility of Damages in the Bankruptcy Action</u>

Defendants argue that proximate cause has not been satisfied because Plaintiffs have not shown that any judgment in their favor in the underlying Bankruptcy Action would have been collectible. (Defs.' Br. at 12–13.) Defendants rely, in part, on Dynkin's bankruptcy petition, which states that he had a negative monthly income and little in assets. (*Id.* at 13.) Assuming without deciding that collectibility of the judgment in the underlying action is a necessary showing to allege proximate cause in a legal malpractice case,[11] the Court concludes that Defendants' arguments are without merit.

As previously noted, the Bankruptcy Action concluded in November 2024, after the instant motion was fully briefed. *In re Dynkin*, No. 8-22-70234 (AST) (Bankr. E.D.N.Y. Nov. 8, 2024),

---

[11] The parties seem to disagree on this question. Plaintiffs argue that "because the Debts . . . in [Dynkin's] bankruptcy action . . . were secured by fraud, . . .the Debts would not have been discharged in the Bankruptcy Action 'but for' Defendants' negligence in failing to file the adversarial [complaint]." (Pls.' Br. at 4.) Defendants respond that "[r]egardless of whether the debt is nondischargeable, the Plaintiffs must set forth facts tending to show that 'but for' the Moving Defendants' negligence, they would have successfully collected from the Debtor." (Defs.' Reply Mot. to Dismiss, Dkt. 29-13 ("Defs.' Reply"), at 3.) In fact, some New York courts have explicitly rejected collectibility as a necessary component of a prima facie legal malpractice claim, though this is not the majority view. *See Waggoner v. Caruso*, No. 602192-2007, 2008 WL 424491, at *11 (N.Y. Sup. Ct. Sept. 10, 2008) (citing *Lindenman v. Kreitzer*, 775 N.Y.S.2d 4, 8 (N.Y. App. Div. 2004)) (noting defendants' argument that the First Department is the only New York Appellate Division that does not require a showing that the plaintiff "could have or would have" recovered their debt but for the attorney's negligence); *see also Lindenman*, 775 N.Y.S.2d at 8 (First Department holding that collectibility of the underlying judgment is not an essential element of a plaintiff's cause of action for legal malpractice).

16

Dkt. 131. The Chapter 7 Trustee's Final Account and Distribution Report in the Bankruptcy Action states that Plaintiffs received a total of $15,721.75 from Dynkin's assets. *Id.*, Dkt. 130, at ECF 5 (noting that "claims [were] paid" in an amount of $5,161.45 to Ben-Zion and $10,560.30 to 18BBs).[12] Defendants' arguments that Plaintiffs' claims are not collectible are therefore plainly contradicted by the subsequent developments in the Bankruptcy Action.

For these reasons, Plaintiffs have sufficiently pled the collectibility element of alleging proximate cause in their legal malpractice claim.

3. <u>Nexus Between Unfavorable Outcome and the Alleged Malpractice</u>

Plaintiffs have also sufficiently alleged a nexus between the unfavorable outcome in the Bankruptcy Action and Defendants' alleged legal malpractice. As stated *supra*, Defendants filed their Adversary Complaint after the deadline to do so had passed. (Am. Compl. ¶ 69.) On December 21, 2022, the Bankruptcy Court issued an order declining to grant the extension, finding, in effect, that Defendants had failed to demonstrate good cause for their tardy filing of the Adversary Complaint and that the record "strongly demonstrate[d]" that Defendants "in fact could have filed [Plaintiffs'] complaint by August 22, and under applicable law they should have." (*Id.* ¶¶ 90, 97.) Since Defendants did not submit Plaintiffs' Adversary Complaint on time, Dynkin's debts to Plaintiffs were discharged. (*Id.* ¶ 98.) Moreover, Defendants' untimely filing of Plaintiffs' proofs of claim resulted in Plaintiffs losing all priority in recovering from disbursement of the bankruptcy estate. (*Id.* ¶¶ 172, 177, 207); *In re Mid-Miami Diagnostics, L.L.P.*, 195 B.R. 20, 22 (Bankr. S.D.N.Y. 1996) (noting that untimely proofs of claim are last in priority as a "penalty" for their tardiness). Defendants do not dispute that this is the effect of having filed Plaintiffs' proofs

---

[12] The Court takes judicial notice of the record in the underlying bankruptcy proceedings. *See KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 219 n.2 (S.D.N.Y. 2019).

17

of claim after the deadline. (Defs.' Br. at 18 ("The practical effect of the late filing of a proof of claim may affect the order in which disbursements are made by the bankruptcy estate.").) Indeed, the Chapter 7 Trustee's Final Account and Distribution Report shows that Plaintiffs' unsecured claims were the last two in line to be paid. *In re Dynkin*, No. 8-22-70234 (AST) (Bankr. E.D.N.Y. Nov. 8, 2024), Dkt. 130 at ECF 5. Proximate cause has therefore been satisfied as to Defendants' alleged malpractice and the unfavorable outcomes in the Bankruptcy Action for Plaintiffs.

### III. Damages

Defendants argue that Plaintiffs have failed to sufficiently establish real and ascertainable damages concerning any of the alleged malpractice. (Defs.' Br. at 17–21.) Specifically, they argue that Plaintiffs' proofs of claim—though untimely filed—were ultimately accepted, and that there are no real damages because the Trustee in the underlying Bankruptcy Action has not yet disbursed the bankruptcy estate. (*Id.* at 18.) Additionally, Defendants contend that because Plaintiffs might recover damages from ongoing litigation in the Florida Action and New York Actions related to the same conduct against the same Defendants, Plaintiffs cannot allege any ascertainable damages in this case. (*Id.* at 19–20.)

In a legal malpractice claim, a plaintiff must only "show the possibility of proving that an actual, identifiable loss related from defendant's negligence." *Diamond v. Sokol*, 468 F. Supp. 2d 626, 633 (S.D.N.Y. 2006). Those damages "must be 'actual and ascertainable,' not 'too speculative and incapable of being proven with any reasonable certainty.'" *Id.* at 634 (quoting *Zarin v. Reid & Priest*, 585 N.Y.S.2d 379, 382 (N.Y. App. Div. 1992)). Here, Plaintiffs' proofs of claim—for $600,000 on behalf of 18BBs and $293,291.40 plus interest for Ben-Zion— "establish[] that the claimed damages are not only theoretically ascertainable, but are amenable to cold, hard calculation." *Id.* at 640. While the actual amount of damages stemming from the untimely proofs of claim is less obvious, it is unnecessary at this juncture to come to a specific

18

numerical calculation of damages because damages can instead be reasonably inferred from the fact that Plaintiffs' unsecured claims were the last two in line to be paid. *See Fielding v. Kupferman*, 885 N.Y.S.2d 24, 28 (N.Y. App. Div. 2009) (explaining that, "[a]t this early stage of the [legal malpractice] proceedings, plaintiff 'is not obliged to show that [they] actually sustained damages,' but only that 'damages attributable to defendants' conduct might be reasonably inferred'" (quoting *InKine Pharm. Co. v. Coleman*, 759 N.Y.S.2d 62, 63 (N.Y. App. Div. 2003)) (cleaned up)).[13]

Further, Defendants cite to no authority suggesting that the pending state court actions against Dynkin, DACS, BenBar, and Atlas prevent Plaintiffs from separately and simultaneously seeking damages from Defendants here based on Defendants' alleged legal malpractice in the Bankruptcy Action. As such, the Court finds that Plaintiffs have sufficiently alleged ascertainable damages resulting from Defendants' alleged legal malpractice.

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' legal malpractice claim is denied.

\*   \*   \*

## IV.  Stay of the Proceedings

Defendants request, in the alternative, that the Court grant a stay of this case pending the final resolution of Benjamin Dynkin's underlying Bankruptcy Action. (Defs.' Br. at 20–21.) However, as discussed, the Bankruptcy Action has concluded and was closed on November 8,

---

[13] Plaintiffs also argue that they have been harmed because they were unable to use their leverage as creditors to purchase assets from Dynkin's estate to satisfy their claims. (Am. Compl. ¶¶ 85–89.) Because the Court has found that damages were sufficiently alleged as to the Adversary Complaint and proofs of claim, it does not need to address whether the loss of settlement leverage created real and ascertainable damages.

19

2024.  *In re Dynkin*, No. 8-22-70234 (AST) (Bankr. E.D.N.Y. Nov. 8, 2024), Dkt. 131. Defendants' request to stay the proceedings is therefore denied as moot.

## V.     Attorneys' Fees

Lastly, Defendants argue that Plaintiffs impermissibly seek attorneys' fees relating to the instant action.  (Defs.' Br. at 21–22.)  However, to the extent that Plaintiffs can prove that they incurred litigation expenses "in an attempt to avoid, minimize, or reduce the damage caused by the attorney's wrongful conduct," those expenses are recoverable.  *Rojas v. Paine*, 4 N.Y.S.3d 223, 225 (N.Y. App. Div. 2015) (quoting *DePinto v. Rosenthal & Curry*, 655 N.Y.S.2d 102, 103 (N.Y. App. Div. 1997)).  The Court, therefore, need not decide this issue at this stage of the litigation.

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is denied.  Plaintiffs may further amend their Amended Complaint within thirty (30) days of this Order, i.e., by April 28, 2025.  Defendants' motion to stay this action pending the resolution of the Bankruptcy Action is denied as moot.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 27, 2025
        Brooklyn, New York